

FILED
2017 Jan-30 PM 02:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| CALANDRA WATSON, | ) |
| Plaintiff, | ) |
| vs. | ) 7:16-cv-00194-LSC |
| ARG RESOURCES LLC, | ) |
| Defendant. | ) |

**MEMORANDUM OF OPINION**

Plaintiff Calandra Watson ("Watson") brings this action against her former employer, Arby's Restaurant Group, Inc. ("ARG"),[1] alleging claims for hostile work environment and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, as well as state-law claims for assault and battery and invasion of privacy. Before this Court is ARG's motion for summary judgment. (Doc. 19.) For the reasons explained herein, ARG's motion is due to be granted.

**I.    FACTUAL BACKGROUND**

Watson began her employment with ARG on July 18, 2012, at ARG's Northport, Alabama, Arby's location as a part-time team member. She sometimes

---

[1] ARG is incorrectly identified in the complaint as "ARG Resources LLC."

worked the closing shift at the restaurant with a co-worker, Darrel Jernigan ("Jernigan"), who was also the store's assistant manager. Jernigan informed Watson that the store's general manager, Janice Jones ("Jones"), had instructed him to ensure that all employees left the restaurant together at the end of the closing shift, so that no employee would be in the restaurant alone. On three separate occasions over a six-week period when Watson worked the closing shift with Jernigan, he engaged in conduct that Watson interprets as sexual harassment.

On the first such occasion, Watson was working in the "back line" area where the food is prepared in the restaurant when Jernigan passed behind her and rubbed his pelvic area against her backside. As Watson turned around, Jernigan made a "smart remark," which Watson considered "harassing." Watson attempted to report Jernigan's conduct to Jones, but Jones responded that Jernigan "probably didn't mean to do it." Watson agreed that Jernigan's conduct may have been accidental because the "back line" area has limited space, and employees sometimes bump into each other while working.

The second incident occurred several weeks later while Watson stood in the kitchen in front of the sink, washing dishes to clean up for the night. Jernigan again came behind Watson, and his pelvic area made contact with her backside. This time, Watson said to Jernigan, "Look, you need to watch what you're doing."

When Watson informed Jones that Jernigan had touched her a second time, Jones giggled and said that Jernigan could not possibly have rubbed his pelvic area against Watson "because his belly was so big."

Finally, on the third occasion, Watson and Jernigan were walking by each other, and Jernigan touched Watson's breast with his elbow. Watson interpreted Jernigan's behavior as intentional because he did not say "excuse me" after brushing against her. Upset at Jones's response to her first complaints, Watson went to a co-worker, Sharrese Burks ("Burks"), and the shift manager, Kelsey Mennig ("Mennig"), in order to find out to whom she should report the touching. Mennig suggested that Watson talk to Jones, to which Watson replied, "Ms. Janice ain't going to do nothing but laugh about it like it's funny. She don't take nobody serious."

At some point after these incidents,[2] Watson was involved in an unrelated disagreement with another employee, which prompted her to contact the restaurant's area supervisor, David Emerson ("Emerson"). Emerson met with Watson on April 9, 2015, and offered her the option to transfer to another Arby's location. At first, Watson declined the transfer and agreed to let the disagreement

---

[2] When asked when the three incidents of "touching" occurred, Watson replied, "I don't know." The timing of the six-week period is therefore unclear from the record, but it is undisputed that the incidents occurred prior to late March 2015, the date of Watson's disagreement with a different co-worker.

with the other employee pass. Watson then complained to Emerson that Jernigan had engaged in "excessive touching" while the two worked together at the restaurant. According to Watson, Emerson replied that "if he had to come back to the store [] somebody was going to be gone." This statement caused Watson to reconsider the option to transfer, and she moved to the University of Alabama Arby's location on April 20, 2015.

Shortly after the transfer, on May 4, 2015, Watson submitted her charge of discrimination to the Equal Employment Opportunity Commission ("EEOC"). Sammie Clark ("Clark"), the general manager of the University of Alabama store, scheduled Watson to work fewer hours than she had been working at the Northport store. Clark also made a rude comment to other employees about Watson's smell. She made no complaint about this incident, however, and remained employed with ARG until February 22, 2016, when she left because she found another, better-paying job.

Watson received her right-to-sue letter from the EEOC on November 9, 2015. This suit was timely filed on February 2, 2016.

## II.    STANDARD OF REVIEW

Watson, proceeding *pro se*, filed no response to ARG's motion for summary judgment. Nonetheless, this Court "consider[s] the merits of the motion" in order

to determine whether summary judgment is appropriate. *United States v. 5800 SW 74th Ave.*, 363 F.3d 1099, 1101–02 (11th Cir. 2004).

A motion for summary judgment is due to be granted upon a showing that "no genuine dispute as to any material fact" remains to be decided in the action and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on such a motion, this Court "view[s] the facts and draw[s] all reasonable inferences in the light most favorable to the party opposing the . . . motion." *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015) (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007)). A genuine dispute as to any material fact exists "if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

## III. Discussion

### A. Hostile Work Environment

Watson first argues that the three incidents of "touching," which she considers sexual harassment, caused her to be subjected to a sexually hostile work environment. In order to establish a prima facie case of hostile work environment, Watson must show (1) that she belongs to a protected group; (2) that she has been subjected to unwelcome sexual advances, requests for sexual favors, and other

conduct of a sexual nature; (3) that the harassment was based on her sex; (4) that the harassment was sufficiently severe or pervasive that it altered the terms and conditions of her employment and created a discriminatorily abusive work environment; and (5) a basis for holding the employer liable. *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808 (11th Cir. 2010). Only the final three requirements are at issue here.

First, ARG contends that Watson fails to demonstrate that Jernigan's actions toward her were based on her sex because Watson admitted that she believed one incident of touching was accidental and because Jernigan made no comments, sexual or otherwise, to her at the time of the alleged contact. "To establish that the harm alleged was 'based on her sex,' [Watson] 'must show that but for the fact of her sex, she would not have been the object of harassment.'" *Mendoza v. Borden*, 195 F.3d 1238, 1248 n.5 (11th Cir. 1999) (en banc). When sexual harassment has occurred, it is permissible to infer that "the harasser [is making] advances towards the victim because the victim is a member of the gender the harasser prefers." *Llampallas v. Mini-Circuits Lab, Inc.*, 163 F.3d 1236, 1246 (11th Cir. 1998) (alteration in original). Watson testified that on two occasions—even if the first was accidental—Jernigan rubbed his pelvic area against her backside, and on a third occasion his elbow grazed her breast. ARG concedes for purposes of

summary judgment that this contact is of a sexual nature, and it is therefore appropriate to assume that Jernigan engaged in the conduct based on Watson's sex.

ARG next argues that the conduct was not sufficiently severe or pervasive as to alter the term and conditions of Watson's employment. In order to prevail on this prong, Watson "must 'subjectively perceive' the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, and this subjective perception must be objectively reasonable." *Reeves*, 594 F.3d at 809 (quoting *Mendoza*, 195 F.3d at 1246). Relevant factors in the analysis include the frequency of the conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim employee's work performance. *Id.* at 808–09. Although Watson may have subjectively perceived Jernigan's behavior as "severe" or "pervasive," that belief was not objectively reasonable.

Watson complains of three particular incidents of "touching" that occurred over a six-week period, one of which may have been accidental. None of the incidents was accompanied by a sexually charged comment, and only the second incident suggests conscious, intentional sexual harassment. The totality of the circumstances here does not mandate the conclusion that Jernigan's conduct, even if harassing or offensive, crosses the established threshold of severity or

pervasiveness to be actionable. First, three alleged incidents of harassment over a six-week period hardly qualify as "pervasive" conduct. *See id.* at 804 (alleging that harassment occurred "on a daily basis"); *Dees v. Johnson Controls World Servs., Inc.*, 168 F.3d 417, 418 (11th Cir. 1999) (alleging "a continuous barrage of sexual harassment" that occurred on an "almost-daily" basis); *Stancombe v. New Process Steel LP*, 652 F. App'x 729, 735 (11th Cir. 2016) (finding "two incidents over a one-month period" insufficiently frequent to constitute a hostile work environment). Moreover, Jernigan's behavior, though "boorish, rude, unwelcome, and insensitive," *Guthrie v. Waffle House, Inc.*, 460 F. App'x 803, 808 (11th Cir. 2012), is not severe under the applicable case law. *See Hulsey v. Pride Restaurants, LLC*, 367 F.3d 1238, 1248 (11th Cir. 2004) (finding that "many direct as well as indirect propositions for sex," "following [plaintiff] into the restroom," "repeated attempts to touch [plaintiff's] breasts, place his hands down her pants, and pull off her pants," and "enlisting the assistance of others to hold her while he attempted to grope her" qualified as objectively severe); *Mendoza*, 195 F.3d at 1247–48 (finding that "one occasion in which [the harasser] rubbed his hip against [plaintiff's] hip while touching her shoulder and smiling" and "two instances in which [the harasser] made a sniffing sound while looking at [plaintiff's] groin area and one instance of sniffing without looking at her groin," among other conduct,

were neither "physically threatening or humiliating" nor severe). The fact that Jernigan, as an assistant manager, was a higher-ranking employee at the restaurant does not enhance the severity of the alleged sexual harassment because Jernigan, unlike the harasser in *Hulsey*, had no authority to discipline or fire Watson, and Watson does not allege that Jernigan used his status as the assistant manager as "leverage" to intimidate her into not reporting the harassment. *See* 367 F.3d at 1248.

Additionally, Watson presents no evidence that Jernigan's conduct interfered with her work performance, as she continued to work for ARG for some period after the "touching" occurred. *See Guthrie*, 460 F. App'x at 808 (finding that alleged harassment did not prevent plaintiff "from performing her job duties" because "[s]he maintained her employment [with defendant] throughout the entire period of alleged harassment"). Emerson's offer to permit Watson to transfer to a different store related to Watson's disagreement with a different employee, and Watson requested the transfer only after Emerson commented that someone would be "gone" if he had to return to the Northport location. Watson concedes that Emerson may have been suggesting that Jernigan, not Watson, would be fired. A claim for hostile work environment lies where "the workplace is permeated with discriminatory intimidation, ridicule, and insult [that] create an abusive working

were neither "physically threatening or humiliating" nor severe). The fact that Jernigan, as an assistant manager, was a higher-ranking employee at the restaurant does not enhance the severity of the alleged sexual harassment because Jernigan, unlike the harasser in *Hulsey*, had no authority to discipline or fire Watson, and Watson does not allege that Jernigan used his status as the assistant manager as "leverage" to intimidate her into not reporting the harassment. *See* 367 F.3d at 1248.

Additionally, Watson presents no evidence that Jernigan's conduct interfered with her work performance, as she continued to work for ARG for some period after the "touching" occurred. *See Guthrie*, 460 F. App'x at 808 (finding that alleged harassment did not prevent plaintiff "from performing her job duties" because "[s]he maintained her employment [with defendant] throughout the entire period of alleged harassment"). Emerson's offer to permit Watson to transfer to a different store related to Watson's disagreement with a different employee, and Watson requested the transfer only after Emerson commented that someone would be "gone" if he had to return to the Northport location. Watson concedes that Emerson may have been suggesting that Jernigan, not Watson, would be fired. A claim for hostile work environment lies where "the workplace is permeated with discriminatory intimidation, ridicule, and insult [that] create an abusive working

environment" for the plaintiff. *See Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179, 1195 (11th Cir. 2016). Because Watson has failed to show such an environment here, summary judgment on her hostile work environment claim is due to be granted in favor of ARG.

### B. Retaliation

Watson further claims that ARG unlawfully retaliated against her by reducing her work hours for two weeks following her transfer to the University of Alabama location and by forcing her to file for bankruptcy. She also considers retaliatory Jones's lack of response to her complaints about Jernigan's behavior and a comment that Clark allegedly made about her smell. Title VII prohibits an employer from discriminating against an employee "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" pursuant to a charge of unlawful discrimination. 42 U.S.C. 2000e–3(a). Absent direct evidence of retaliation, the plaintiff may demonstrate circumstantial evidence of retaliation through the *McDonnell Douglas* burden-shifting framework. *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, the aggrieved employee "create[s] a presumption that the adverse action was the product of an intent to retaliate" by making out a prima facie case of retaliation.

*Brown*, 597 F.3d at 1181 (quoting *Bryant v. Jones*, 575 F.3d 1281, 1308 (11th Cir. 2009)). The burden then shifts to the defendant employer "to rebut the presumption by articulating a legitimate, non-discriminatory reason for the adverse employment action." *Id.* (quoting *Bryant*, 575 F.3d at 1308). The employer's legitimate, nondiscriminatory reason for the adverse employment action destroys the presumption of retaliation but allows the plaintiff employee an opportunity to prove his case through additional evidence demonstrating that the employer's reason is a pretext for unlawful retaliation. *Id.* at 1181–82 (quoting *Bryant*, 575 F.3d at 1308).

A plaintiff employee establishes a prima facie case of retaliation by demonstrating that (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) that a causal connection exists between the protected activity and the adverse employment action. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007). It is undisputed that Watson engaged in statutorily protected activity.

Only one of the acts Watson avers are retaliatory qualifies as an adverse employment action, however. In the retaliation context, an adverse employment action is one that might "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*,

548 U.S. 53, 68 (2006). The adversity must be material, beyond "those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* There is little doubt that "[a] reduction in an employee's hours, which reduces the employee's take-home pay, qualifies as a tangible employment action." *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1231 (11th Cir. 2006). Clark's unrelated comment, by contrast, more closely resembles a "simple lack of good manners" that would not deter a reasonable employee from lodging a complaint. *See White*, 548 U.S. at 68. Further, any issue Watson raises with Jones's failure to "do anything about" Jernigan is not an adverse employment action "because [Jones's] actions were not taken against [Watson] herself." *See Entrekin v. City of Panama City*, 376 F. App'x 987, 995 (11th Cir. 2010) ("[Defendant's] failure to take action against other individuals does not constitute an adverse employment action, because [plaintiff] herself suffered no harm." (citing *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001))). Finally, Watson's own decision to file for bankruptcy is not an action taken by her employer, and to the extent she alleges she had to file for bankruptcy due to the reduction in her hours, this Court considers the filing as part of the reduction.

Watson has established a nexus between her complaints about sexual harassment and the reduction in her work hours. A causal connection between the

protected activity and the adverse employment action exists if the plaintiff shows that these two actions "were not wholly unrelated." *See Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000). The temporal proximity of the adverse employment action to the protected activity, if "very close," may be "sufficient to establish an inference of retaliation." *Brown*, 597 F.3d at 1182. The record demonstrates that prior to making a complaint to Emerson, Watson averaged about fifty hours per two-week period. Following her transfer to the University of Alabama location and her subsequent filing of the EEOC charge, however, Watson worked only forty hours per two-week period beginning on May 18, 2015, and lasting until approximately August 2015.[3] Additionally, there is some evidence that the ultimate decisionmaker, Clark, "was aware of the protected conduct at the time of the adverse employment action." *Brungart*, 231 F.3d at 799. Watson testified that she overheard a phone call during which Jones informed Clark that Watson would be transferring, and she believes that Jones called Clark in order to ask Clark to "retaliate against [Watson]." Given the temporal relationship between Watson's filing of an EEOC complaint and the reduction in her hours and the undisputed fact that a conversation between Jones and Clark took place, these events are not "wholly unrelated." *See id.* Because Watson has established a prima

---

[3] Watson testified at her deposition that her hours were reduced only for two weeks following her transfer, but the payroll records reveal otherwise.

facie case of retaliation with respect to the reduction in her work hours, the burden shifts to ARG to show that Watson's hours decreased for a legitimate, nondiscriminatory reason.

ARG attributes the reduction in Watson's hours to a significant decrease in business at the University of Alabama Arby's location during portions of the year when students are not on campus. Watson transferred to the University of Alabama store in late April, which coincides with the end of the university's academic year. Upon Watson's transfer, Clark informed her that part-time employees would be scheduled to work fewer hours because the restaurant received less business and needed fewer employees to work. Indeed, Watson's hours were reduced throughout the summer, and she resumed working about fifty hours per two-week period in August 2015, which coincides with the beginning of the academic year. Watson presents no further evidence that ARG's articulated reason for the reduction in her hours is pretext for unlawful retaliation, and the record demonstrates that even during the periods that Watson worked forty hours, she continued to receive more hours than other part-time employees. ARG is therefore entitled to summary judgment on Watson's retaliation claim.

### C. State-Law Claims

Having granted summary judgment in favor of ARG on Watson's federal claims, this Court has "dismissed all claims over which it has original jurisdiction." *See* 28 U.S.C. § 1367(c)(3). It therefore declines to exercise supplemental jurisdiction over Watson's state-law claims for assault and battery and invasion of privacy. *Id.*; *see Murphy v. Fla. Keys Elec. Co-op. Ass'n*, 329 F.3d 1311, 1320 (11th Cir. 2003). These claims are therefore due to be dismissed without prejudice so as to allow her to file the same in state court. If Watson wishes to proceed with these claims, she must file an action in the appropriate state court within thirty days of the date of this Order. *See* 28 U.S.C. § 1367(d) (tolling "the period of limitations" for a state-law claim over which a federal court may exercise supplemental jurisdiction "while the claim is pending and for a period of 30 days after it is dismissed"); *Rester v. McWane, Inc.*, 962 So. 3d 183, 186 (Ala. 2007) ("Under [§ 1367(d)], the statute of limitations for state-law claims is tolled . . . when a party seeks to refile in the state court the same state-law claims the party asserted in the federal court.").

### IV. Conclusion

For the reasons stated above, ARG's motion for summary judgment is due to be GRANTED as to the Title VII hostile work environment and retaliation claims.

Watson's state-law claims are due to be DISMISSED WITHOUT PREJUDICE. A separate order consistent with this opinion will be entered contemporaneously herewith.

  **DONE** AND **ORDERED** ON JANUARY 30, 2017.

                              _____
                                      L. SCOTT COOGLER
                                UNITED STATES DISTRICT JUDGE
                                                                186289